UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE MOURA, SR., PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSE MOURA, JR., LORI TURNER, AS PARENT AND NEXT FRIEND OF MINOR PLAITIFFS A.M., C.M., and J.M., LORI TURNER, INDIVIDUALLY<br><br>PLAINTIFFS,<br><br>v.<br><br>NEW PRIME, INC. and JOHN DOE, PERSONAL REPRESENTATIVE OF THE ESTATE OF JOHN PAUL CANNON<br><br>DEFENDANTS. | CIVIL ACTION<br><br>NO. 4:17-40166-TSH |

**ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Docket No. 9).**

**October 9, 2018**

**HILLMAN, D.J.**

Defendant, New Prime, Inc. ("New Prime") filed a motion to dismiss pursuant to Fed. R. Civ. Pr. 12(b)(2) for lack of personal jurisdiction. (Docket No. 9). For the reasons that follow, New Prime's motion is ***denied***.

**Background**

New Prime is a Nebraska trucking corporation with its principal place of business in Missouri. (Docket No. 10 at 15). It has terminals in Springfield, Missouri, Salt Lake City, Utah, and Pittston, Pennsylvania. *Id.* In Massachusetts, New Prime has employed between 45 and 60 drivers who have driven between 7,821,068 and 9,606,194 miles within the forum in the last five years. *Id.* This business has generated between $1,467,732,381.40 and $1,908,780,325.30 in

1

revenue annually over that period. *Id.* at 16. Importantly, these figures represent only a small portion of New Prime's business nationally, accounting for less than one percent of its drivers and revenue and just over one percent of the total miles driven by company drivers. *Id.* at 15-16.

Plaintiff decedent Jose Moura, Jr. ("Mr. Moura") and his family lived in Shrewsbury Massachusetts. Over an eight-month period in 2016, Mr. Moura completed an initial driver training program at New England Tractor Trailer Training School ("NETTTS"), a Massachusetts company, to obtain his Commercial Driver's License. (Turner Decl. ¶ 4). New Prime first contacted Mr. Moura about potential employment opportunities by sending a recruiter to the NETTTS Rhode Island campus. *Id.* ¶ 6. Further, while Mr. Moura was in Massachusetts, he received U.S. Mail, emails, and phone calls from New Prime describing employment and training opportunities with the company. *Id.* ¶ 8. New Prime also sent Mr. Moura a contract to begin its driver training program. *Id.* ¶ 9. When Mr. Moura accepted this offer, New Prime sent a document confirming the training contract and purchased a bus ticket for Mr. Moura to travel from his Massachusetts home to Pennsylvania in order to begin training. *Id.* ¶ 11.

Upon his arrival in Pennsylvania, Mr. Moura presented New Prime with his Massachusetts Commercial Driver's License. *Id.* ¶ 12. He was then assigned to work with Defendant John Paul Cannon ("Mr. Cannon") as his training driver. *Id.* ¶ 13. Over the next several months, Mr. Moura drove within Massachusetts on behalf of New Prime. *Id.* ¶ 14. In early December, Mr. Moura gained the necessary 40,000 training miles. *Id.* ¶ 16. Mr. Moura completed his training at or near New Prime's Salt Lake City, Utah terminal, (Docket No. 1 ¶ 21), thus, when he reached New Prime's Salt Lake City, Utah hub, he was no longer a trainee. (Turner Decl. ¶ 17). Further, because he had not yet signed an agreement, he was not employed by New Prime. *Id.* Mr. Moura and Mr. Cannon left Salt Lake City for New Prime's headquarters in Missouri. (Docket No. 1 ¶ 22). On

December 14, while traveling through Oklahoma, Mr. Cannon struck another tractor-trailer at a high rate of speed. *Id.* ¶ 23. Mr. Cannon was killed in the accident. Mr. Moura was critically injured. *Id.* ¶ 25-26. On December 20, Mr. Moura was placed on a medical flight to Boston for further treatment at Massachusetts General Hospital. *Id.* ¶ 28. He died in transport due to extubation and complications from his injuries. (Docket No. 17 at 8).

## Standard of Review

When considering a Rule 12(b)(2) motion without an evidentiary hearing, a district court uses the prima facie standard to evaluate whether it has personal jurisdiction over the defendant. Under this standard, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). The plaintiff bears the burden of showing that the court may exercise personal jurisdiction over the defendant and "must put forward evidence of specific facts to demonstrate that jurisdiction exists." *A Corp. v. All Am. Plumbing*, 812 F.3d 54, 58 (1st Cir. 2016) (internal quotation marks and citation omitted). Further, courts "take the plaintiff's evidentiary proffers as true and construe them in the light most favorable to the plaintiff's claim." *C.W. Downer & Co. v. Bioriginal Food & Sci. Cor.*, 771 F.3d 59, 65 (1st Cir. 2014). Finally, courts also "consider uncontradicted facts proffered by the defendant." *Id.*

## Discussion

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Thus, in order to establish personal jurisdiction over New Prime, Mr. Moura must satisfy the requirements of both the

Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290 (1980).

The Massachusetts long-arm statute enumerates eight specific grounds on which a nonresident defendant may be subjected to personal jurisdiction by a court of the Commonwealth. *See* Mass. Gen. Laws ch. 223A, § 3. Massachusetts courts have held that the long-arm statute "asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statue has been established." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979). Therefore, this court is "required to decline to exercise jurisdiction if the plaintiff [is] unable to satisfy at least one of the statutory prerequisites." *Id.*

Finally, "courts should consider the long-arm statute first, before approaching the constitutional question." *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 (2017). Determining first whether the long-arm statute's requirements are met is consistent with the duty to avoid "decid[ing] questions of a constitutional nature unless absolutely necessary to a decision of the case." *Burton v. United States*, 196 U.S. 283, 295 (1905).

*1. Massachusetts Long-Arm Statute*

The Massachusetts Long Arm Statue provides, in relevant part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3. Thus, New Prime must have transacted business in the Commonwealth and the Plaintiffs' claims must have arisen from that transaction of business.

The requirement that a defendant transact business in the Commonwealth "has been construed broadly." *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994) (citations omitted). "Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient,

generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." *Id.* New Prime has satisfied this jurisdictional precondition. For instance, New Prime has received permission for 275 large tractor trailers to be present on roads in Massachusetts to deliver alcohol. (Docket No. 17 at 5). These trucks have driven 42,726,148 miles on Massachusetts roads and generated $63,114,195.99 in revenue in the last five years. *Id.* As part of that business, New Prime hires and trains new drivers. New Prime has employed 45-60 drivers in Massachusetts over the last five years. (Docket No. 10 at 15). Through its recruitment efforts, New Prime attempted to make Mr. Moura another one of these drivers. Mr. Mora was contacted repeatedly by New Prime in the Commonwealth by snail-mail, email, and phone calls. *Id.* Further, Mr. Moura was sent, and accepted a contact to begin its driver training program. *Id.* ¶¶ 9-11. After Mr. Moura accepted the offer, New Prime purchased a bus ticket so that he could travel to Pennsylvania. *Id.* ¶ 11. Mr. Moura then drove throughout the Commonwealth while completing his training. *Id.* ¶ 14. Hiring and training drivers, of course, is an essential element of New Prime's business in the Commonwealth and part of its overall transaction of business in the state.

In addition, the Plaintiffs' claims have arisen from the New Prime's transaction of business in the Commonwealth. In accordance with the broad construction of the long-arm statute, the court in *Tatro* asserted jurisdiction when a Massachusetts resident was injured at a California hotel and interpreted the "arising from" requirement to require only "but for" causation. 416 Mass. at 770 (concluding that "terms such as 'arising from' . . . should be interpreted as creating a 'but for' test. This test permits jurisdiction in a case [where the transaction of business is] the first step in a train of events that results in the personal injury."). New Prime argues that this requirement has not been met, but New Prime defines its transaction of business narrowly. Importantly, New Prime

does not include its contacting and training drivers as part of its transaction of business in the Commonwealth. I find, however, that contacting, contracting with, and training Mr. Moura was part of New Prime's transaction of business in the Commonwealth. Further, it is clear that but for this transaction, Plaintiff would not have been harmed. Indeed, it was the first step in the train of events that led to his death. Therefore, I find that asserting jurisdiction is proper under the Massachusetts long-arm statute.

### 2. Constitutional Due Process

Because Plaintiffs have satisfied their burden of demonstrating that exercising jurisdiction does not violate the Massachusetts long-arm statute, they must now demonstrate that it does not offend the Due Process Clause. "The exercise of personal jurisdiction may, consistent with due process, be either specific or case-linked or general or all-purpose." *Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (2015) (internal citations omitted).

#### a. General Jurisdiction

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Typically, the equivalent places for a corporation are "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). *See Bristol-Myers Squibb v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) ("'only a limited set of affiliations with a forum state will render a defendant amenable to' general jurisdiction in that State.") (quoting *Daimler*, 571 U.S. at 137). When examining a corporation's activities, asserting general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be

deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business.'" *Daimler*, 571 U.S. at 139 n. 20. *See Brown v. Lockheed Martin Corp.* 814 F.3d 619, 627 (2d Cir. 2016) ("in our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business.").

Here, New Prime is a Nebraska corporation with its principal place of business in Missouri. Further, only about one percent of the miles its drivers covered in the last five years has been in Massachusetts and less than one percent of its drivers over the same period reside in the Commonwealth. Plaintiffs do not argue that New Prime is "essentially at home" in Massachusetts or suggest that this is an "exceptional" case where the exercise of general jurisdiction would be appropriate. Thus, the extent of New Prime's Massachusetts activities does not approach what is required to assert general jurisdiction.

### b. Specific Jurisdiction

Where a court lacks general jurisdiction, it may still exercise specific personal jurisdiction. The inquiry into whether there has been the requisite "minimum contacts" necessary to assert specific personal jurisdiction is inherently imprecise: "the criteria which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative." *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). To assist in this necessarily individualized assessment, the First Circuit has held that a plaintiff seeking to establish specific jurisdiction must demonstrate that three conditions are satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and

making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

*Phillips*, 530 F.3d at 27 (quoting *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007).

### i. Relatedness

The relatedness inquiry "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." *Sawtelle*, 70 F.3d at 1389. In a contract dispute, the First Circuit has held that "the proximate cause standard better comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry. A 'but for' requirement, on the other hand, has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996). However, the court qualified its support for the proximate cause standard:

> That being said, we are persuaded that strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive. The concept of proximate cause is critically important in the tort context because it defines the scope of a defendant's liability. In contrast, the first prong of the jurisdictional tripartite test is not as rigid: it is, relatively speaking, . . . a flexible, relaxed standard. We see no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause per se should always render the exercise of specific jurisdiction unconstitutional.
> 
> When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.
> 
> This concept represents a small overlay of "but for" on "proximate cause."
> 
> *Id.* at 715-16. (quotation marks and citations omitted).

Thus, when a tort claim arises out of a contractual relationship (as is the case here) the First Circuit has held that but-for causation may satisfy the relatedness inquiry and comport with due process.

In *Nowak*, the defendant, a hotel in Hong Kong, solicited the plaintiff's company advertising corporate rates. Subsequently, the plaintiff's wife drowned in the hotel pool. The court found jurisdiction and noted that the defendant "knew that [the plaintiff's company] employees would stay at its hotel, and could easily anticipate that they might use the pool, a featured amenity of the hotel." *Id.* at 716. Therefore, while the relationship between the solicitation of business and the death of the plaintiff's wife "does not constitute a proximate cause relationship, it does represent a meaningful link between [the defendant's] contact and the harm suffered. Given these circumstances, we think it would be imprudent to reject jurisdiction at this early stage of the inquiry." *Id. See Matos v. Seton Hall Univ.*, 102 F. Supp. 3d 375, 379-80 (D. Mass. 2015) (finding relatedness prong met when a student sued a university for discrimination at its New Jersey campus that arose out of recruiting materials and a scholarship offer sent to his Massachusetts home); *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 67 (D. Mass. 2001) (finding relatedness prong met because "Disney's solicitation in Massachusetts which led to [the plaintiff] to make reservations at [the defendant's hotel] was not the proximate cause of [the plaintiff's] injury at [a restaurant on the resort's property], but it was reasonably foreseeable that advertising in Massachusetts for the Walt Disney World Resort would induce Massachusetts residents to make reservations at a Disney-owned hotel" and that they might subsequently eat at the restaurant).

Here, Mr. Mora was contacted by New Prime in the Commonwealth. (Turner Decl. ¶ 8). He was sent snail-mail, email, and received phone calls from Defendant describing employment opportunities. *Id.* Further, Mr. Moura was sent, and accepted a contract to begin its driver training program. *Id.* ¶¶ 9-11. This solicitation of business and subsequent contractual relationship, like the solicitation of business in *Nowak* and *Sigros*, and the scholarship offer in *Matos*, was not the proximate cause of Mr. Moura's death. Nonetheless, Mr. Moura's death was made more likely by

New Prime's recruiting efforts aimed at and the contract sent to Mr. Moura in the Commonwealth. Indeed, but for these efforts, Mr. Moura would likely still be alive. Therefore, I find that New Prime's activity and Mr. Moura's death are sufficiently related to satisfy the constitutional requirements of due process.

### ii. Purposeful Availment

"In determining whether the purposeful availment condition is satisfied, our key focal points are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 5 (1st Cir. 2016) (quotation marks and citation omitted). Voluntariness requires that the defendant's contacts with the forum state are "not based on the unilateral actions of another party or a third person." *Nowak*, 94 F.3d at 716 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Foreseeability requires that "the defendant's contacts with the forum state be such that he should reasonably anticipate being haled into court there." *Id.* (citing *World-Wide Volkswagen,* 444 U.S. at 297). As an operator of a nation-wide trucking business, New Prime does have extensive contacts with the forum. When inquiring whether Defendant has purposefully availed itself of the forum, however, the only relevant contacts are those that gave rise to the cause of action. *See Copia Communications*, 812 F.3d at 5.

New Prime plainly "reached into Massachusetts" in order to solicit Mr. Moura's employment. *Sigros*, 129 F. Supp. 2d at 68 (citation omitted). As discussed above, New Prime voluntarily and extensively contacted Mr. Moura and eventually entered into a training contract with him while he was in the forum. After Mr. Moura accepted the training contract, New Prime sent a confirmation document to him and purchased a bus ticket for him to travel from his Massachusetts home to Pennsylvania in order to begin training. Thereafter, Mr. Moura performed

10

much of his training contract in the Commonwealth, which is properly regarded as part of New Prime's contact in the forum. *See Cossart*, 804 F.3d at 21 (noting that "the performance of work under [a] contract [by a plaintiff]" is properly "treated as contact with the forum *by the out-of-state company* because the voluntary contractual relationship had foreseeable led the [plaintiff] to undertake that work.") (emphasis in original). These contacts rendered foreseeable the possibility of being haled into a Massachusetts court. *See Nowak*, 94 F.3d at 717 (finding the possibility of being subject to jurisdiction in Massachusetts foreseeable where defendant solicited Massachusetts corporation for the purpose of bringing employees of that corporation to its Hong Kong hotel). Therefore, I also find that New Prime has purposefully availed itself of the forum.[1]

### iii. Reasonableness

Finally, this court must consider the reasonableness of exercising jurisdiction over New Prime. Accordingly, asserting jurisdiction must comport with traditional notions of "fair play and substantial justice." *International Shoe*, 326 U.S. at 320. "Out of this requirement, courts have

---

[1] In the breach of contract context, the First Circuit held in *Cossart* that the defendant had purposefully availed itself of Massachusetts based on three factors: "the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services." *Copia Communications*, 812 F.3d at 6 (citing *Cossart* 804 F.3d at 21). As to the first two factors, the court noted that the defendant "recruited [the plaintiff] at his home in Massachusetts. The resulting employment contract . . . contemplated that [the plaintiff] would continue to work from Massachusetts on [the defendant's] behalf and that the company would facilitate that work by providing the requisite office equipment." *Cossart*, 804 F.3d at 21. The same is true here. Defendant recruited Mr. Moura to drive for New Prime at his home in Massachusetts. Further, after completing his training contract, both parties presumably anticipated that Mr. Moura would drive for Defendant New Prime in the Commonwealth. In addition, Defendant facilitated that work by providing the requisite training for Mr. Moura. As to the third factor, the court in *Cossart* noted that the plaintiff "did significant work for [the defendants] in Massachusetts—as the defendants clearly foresaw he would." *Id.* at 22. Again, the same is true here. Mr. Moura performed on his training contract with New Prime, completing 40,000 miles of driving and much of it throughout the Commonwealth—as New Prime foresaw he would. Thus, while this is not a breach contract claim, Mr. Moura has also demonstrated the same jurisdictional prerequisites for purposeful availment that the First Circuit has mandated in contract cases.

11

developed a series of factors that bear on the fairness of subjecting a nonresident to a foreign tribunal." *Nowak*, 94 F.3d at 717. These "gestalt factors" are:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *C.W. Downer*, 771 F.3d at 69 (alterations in original) (quoting *Ticketmaster*, 26 F.3d at 209).

The gestalt factors help the court do substantial justice, especially where the relatedness and purposeful availment inquiries are close. *Nowak*, 94 F.3d at 717. "In such cases, the gestalt factors may tip the constitutional balance." *Id.* Consequently, our assessment of these factors operates on a sliding scale: "[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d, 201, 210 (1st Cir. 1994). "The reverse is equally true: a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness." *Nowak*, 94 F.3d at 717.

*(1) Burden of Appearance*

While it is always a burden for a foreign defendant to appear in the forum state, for this factor to have any import, the defendant must show that the "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994). Here, New Prime's burden is not unusual compared to other foreign defendants. Indeed, the burden of appearance for New Prime is likely comparatively small. New Prime has extensive contacts with Massachusetts and operates in the forum on a daily basis. Thus, this factor does not tip the balance in New Prime's favor.

*(2) Interest of the Forum*

While a forum state has a significant interest in asserting jurisdiction over a defendant who causes tortious injury within its borders, *Ticketmaster*, 26 F.3d at 211, that interest is lessened when the injury occurs outside of the forum. *Sawtelle*, 70 F.3d at 1395. "Nonetheless, our task is not to compare the interest of the two sovereigns—the place of the injury and the forum state—but to determine whether the forum state *has* an interest." *Nowak*, 94 F.3d at 718. And while the interest of the Commonwealth may have been greater had the accident occurred here, "Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe." *Id.* Thus, although the accident did not take place in the Commonwealth, significant events did take place in the forum that led to the accident and give the forum an interest in adjudicating the dispute. Indeed, New Prime regularly reaches into Massachusetts, employing a number of drivers and deriving substantial profit in the forum. Here, New Prime reached into the Commonwealth and convinced one of its citizens to partake in its training program. Subsequently, Mr. Moura was killed in a truck owned by New Prime and operated by one of its independent contractors. The forum has an interest in keeping its citizens safe from New Prime's voluntary and purposeful actions in the forum. Thus, this factor tips the scales in Plaintiffs' favor.

*(3) Plaintiff's Convenience*

"This Court must accord deference to the [Plaintiff's] choice of a Massachusetts forum." *Nowak*, 94 3d. at 718. In addition to the deference that must be afforded this choice, litigating in Massachusetts is clearly most convenient for Plaintiff. Ms. Turner is suddenly a single mother of three children. (Docket No. 17 at 18). Further, all of the witnesses to the damages suffered by Mr. Moura are here in Massachusetts. *Id.* This factor unequivocally tips in favor of asserting jurisdiction.

*(4) The Administration of Justice*

Typically, "this factor is a wash." *Nowak*, 94 F.3d at 718 (citing *Ticketmaster*, 26 F.3d at 211; *Sawtelle*, 70 F.3d at 1395). However, the administration of justice "counsels against furcation of the dispute among several different jurisdictions. Such a result would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes." *Pritzker*, 42 F.3d at 64. In this case, if this Court does not assert jurisdiction there could be consolidation issues following a state court filing in Massachusetts for Medical Malpractice with the possibility of piecemeal litigation in different forums. (Docket No. 17 at 19). Thus, the most efficient resolution of this litigation is likely in the Commonwealth.

*(5) Pertinent Policy Arguments*

The final factor "implicates the interests of the affected governments in substantive social policies." *Pritzker*, 42 F.3d at 64. The Commonwealth has an interest in preventing corporations from reaching into the forum and then exposing them to subsequent harm. *See Nowak*, 94 3d at 719 ("Massachusetts has an interest in protecting its citizens from out-of-state providers of goods and services as well as affording its citizens a convenient forum in which to bring their claim."). While other forums may have an interest in this litigation, none would appear to be as weighty as Massachusetts's interest in protecting its citizens from harm from foreign corporations. Accordingly, this factor also tips in favor of asserting jurisdiction.

In addition to satisfying the requirements of relatedness and purposeful availment, the "gestalt factors" also favor this Court asserting jurisdiction over New Prime. Thus, personal jurisdiction comports with the constitutional requirements of due process.

## Conclusion

For the reasons stated above, I find that Plaintiffs have proffered sufficient evidence to support a finding that the assertion of jurisdiction over New Prime does not violate the Massachusetts long-arm statute or offend constitutional due process.  Therefore, New Prime's motion to dismiss for lack of personal jurisdiction (Docket No. 9) is ***denied***.